**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                                                                      No. 25-2088

JESUS MANUEL SALGUEIDO,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:87-CR-00408-WJ-1)**
_____

Submitted on the briefs:[*]

Gracie Johnson of Gracie Johnson Law, Compton, CA, for Defendant-Appellant.

Ryan Ellison, Acting United States Attorney, and James R.W. Braun, Assistant United States Attorney, Office of United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **HARTZ**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Jesus Manuel Salgueido appeals the district court's denial of his petition for a writ of *coram nobis* challenging his conviction. He argues that his court-appointed lawyer provided ineffective assistance of counsel in his original proceedings in district court because the lawyer did not advise him of the immigration-related consequences of his plea agreement. Therefore, he says, he should be allowed to withdraw his guilty plea and his conviction should be vacated. We deny relief because he has failed to satisfy the stringent conditions for issuance of a writ of *coram nobis* and because his claim lacks merit. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal of his petition.

## I.    BACKGROUND

In 1987 the government charged Petitioner with misdemeanor possession of cocaine, in violation of 21 U.S.C. § 844(a). Represented by counsel, he pleaded guilty to the possession charge. The court sentenced him in January 1988 to imprisonment for one year.

Now, more than 38 years later, Petitioner seeks *coram nobis* relief. He asserts that he "had no lawful immigration status at the time of his plea and was subject to the rules of inadmissibility under the Immigration and Nationality Act." Aplt. App. at 7[1] (Petition). But neither his court-appointed lawyer nor the court properly informed him that his plea could have immigration consequences. (He does not say that he was affirmatively misled by counsel or the court.) He contends that this

---

[1] Petitioner submitted his appendix without page numbers. We refer to the PDF pagination numbers in Adobe Acrobat.

failure constituted ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that defense counsel must inform clients that a plea could carry a risk of deportation. According to Petitioner, he would have rejected the plea agreement if his lawyer had alerted him to the risks.

The government opposed the petition. It said that Petitioner did not exercise the requisite diligence because his *coram nobis* claim was based on a Supreme Court case (*Padilla*) that had been handed down 15 years before he petitioned for this relief. It also argued that he was not entitled to relief because he had "professe[d] neither legal nor actual innocence in his petition." Aplt. App. at 38. And it contended that *Padilla* could not be applied retroactively to his case. The district court denied the petition.

## II.    DISCUSSION

We review a district court's denial of a petition for a writ of *coram nobis* for abuse of discretion, *see United States v. Lesane*, 40 F.4th 191, 196 (4th Cir. 2022); *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000), mindful that "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence," *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 394, 405 (1990); *see Lesane*, 40 F.4th at 196 (reviewing questions of law de novo and factual findings for clear error in *coram nobis* appeal); *Blanton v. United States*, 94 F.3d 227, 230 (6th Cir. 1996) (same); *Mandanici*, 205 F.3d at 524 (reviewing "*de novo* the question of whether a

district judge applied the proper legal standard"). The district court acted well within its discretion when it denied *coram nobis* relief in this case.

### A.     The Writ of *Coram Nobis*

Even at its inception in England some four centuries ago, the writ of *coram nobis* was designed to fit only a limited need. *See* 7 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* § 28.1(c), at 179 (4th ed. 2015). Rehearing after judgment was restricted to the term of court, *see United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988), and on a writ of error a higher court could consider only mistakes of law, *see* LaFave et al., *supra*, § 28.1(c), at 179. The writ of *coram nobis* filled a gap by authorizing the trial court to correct later-discovered errors of fact. *See id.* at 180; *see United States v. Morgan*, 346 U.S. 502, 507 (1954) ("The writ of *coram nobis* was available at common law to correct errors of fact.").

In our federal courts the writ was abandoned in civil proceedings by a 1946 amendment to Fed. R. Civ. P. 60(b). *See* Fed. R. Civ. P. 60(e) & advisory committee's note to 1946 amendment. But less than a decade later, the Supreme Court held in *Morgan*, 346 U.S. at 505 n.4, that *coram nobis* nevertheless still retained some vitality in criminal proceedings under the authority of the All Writs Act. The Court's 5–4 decision recognized a "motion in the nature of a writ of error coram nobis," *id.* at 505, describing it as an "extraordinary remedy," *id.* at 511, "of the same general character as [a motion challenging a conviction or sentence] under 28 U.S.C. § 2255," *id.* at 505 n.4. Recognizing that the writ could delay final resolution of controversies by permitting "[c]ontinuation of litigation after final

**4**

judgment and exhaustion or waiver of any statutory right of review," the Court limited its use to "circumstances compelling such action to achieve justice" and to "errors of the most fundamental character." *Id.* at 511–12 (internal quotation marks omitted).

Morgan sought to set aside an old conviction, even though he had fully served his sentence, because that conviction had been used to enhance his sentence on a later conviction. *See id.* at 503–04. Taking Morgan's allegations as true (although placing on him the ultimate burden of establishing that there had been irregularity in his prior proceeding), the Court held that he could obtain relief from the first conviction if he established that he had pleaded guilty without counsel, without knowledge of the law or having been advised of his rights, and without waiving his right to counsel. *See id.* at 511–12. The Court apparently concluded that if those facts were established, "no other remedy" had been available to Morgan at trial, and "sound reasons exist[ed] for [his] failure to seek appropriate earlier relief." *Id.* at 512; *see* 3 *Wright & Miller's Federal Practice & Procedure* § 624 (5th ed. 2026) ("In order to obtain the writ [in *Morgan*], the defendant was required to show that no other remedy was then available and that sound reasons existed for his failure to seek appropriate earlier relief" (footnote omitted)).

Aside from *Morgan*, the Supreme Court has provided little guidance on the applicability and scope of *coram nobis* relief. Yes, *Morgan* did rely on an earlier dictum of the Court in *United States v. Mayer*, 235 U.S. 55 (1914), when stating that "*coram nobis* included errors 'of the most fundamental character.'" 346 U.S. at 512

(quoting *Mayer*, 235 U.S. at 69). And *Morgan* quoted the passage in which *Mayer* described "errors of the most fundamental character" as those that "rendered the proceeding itself irregular and invalid." *Mayer*, 235 U.S. at 69, *quoted in Morgan,* 346 U.S. at 509 n.15. This description does provide a clue to the meaning of *fundamental character*. But *Morgan* did not explicitly adopt the *Mayer* definition, the discussion of *fundamental character* in *Mayer* was unnecessary to the decision in that case (the Court "express[ed] no opinion" on whether *coram nobis* relief could be available in criminal cases, 235 U.S. at 69), and *Morgan* (by granting relief based on a legal error) departed from the suggestion in *Mayer* that *coram nobis* could correct only "certain matters of fact," *id.* Accordingly, we cannot take *Mayer*'s description of *fundamental character* as definitive.

Since *Morgan*, the Supreme Court has mentioned *coram nobis* only in dicta. In *Carlisle v. United States*, 517 U.S. 416 (1996), the Court quoted a pre-*Morgan* case saying that "'it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate.'" *Id.* at 429 (brackets in *Carlisle*) (quoting *United States v. Smith*, 331 U.S. 469, 475 n.4 (1947)). But both the opinion for the Court and the dissent in *Carlisle* overlooked *Morgan*.

In *United States v. Denedo*, 556 U.S. 904 (2009), the holding was limited to the proposition that "the military appellate courts had jurisdiction to hear respondent's request for a writ of *coram nobis*." *Id.* at 917. But after presenting a brief history of the writ—noting, for example, that it was "designed to correct errors of fact," *id.* at 910 (internal quotation marks omitted)—the Court explicitly said

**6**

several things that are perhaps implicit in *Morgan*: It declared that "in its modern iteration *coram nobis* is broader than its common-law predecessor," *id.* at 911; *see id.* at 912–13 (the writ is a "tool to correct a legal or factual error"). It emphasized that the writ is available only in "extraordinary cases presenting circumstances compelling its use to achieve justice." *Id.* at 911 (internal quotation marks omitted), *see id.* at 916 ("[C]oram nobis issues only in extreme cases"). And it said that the writ "may not issue when alternative remedies, such as habeas corpus, are available." *Id.* at 911.

This court's precedents follow and elaborate on these Supreme Court opinions. We have focused on three requirements, each of which can be said to derive from the very nature of an "extraordinary" remedy: (1) the petitioner cannot obtain or could not have obtained relief through other remedies; (2) absent relief, the petitioner will suffer extraordinary injury—a miscarriage of justice; and (3) petitioner has acted diligently to obtain *coram nobis* relief, as befitting the magnitude of the injury and the importance of finality. We address each requirement in turn.

First, although the Supreme Court opinion in *Denedo* speaks in the present tense, saying that *coram nobis* relief "may not issue when alternative remedies, such as habeas corpus, *are* available," *id.* at 911 (emphasis added), we have construed this limitation to apply if there was ever a time when the alternative remedy was available and adequate. Thus, in *United States v. Payne*, 644 F.3d 1111, 1113 (10th Cir. 2011), we rejected a *coram nobis* petition because the defendant had "failed to offer any explanation why he could not have pursued relief under § 2255," even though such a

7

motion "would have been untimely by the time he filed his [*coram nobis*] petition." We explained that "§ 2255 relief is not unavailable merely because it is time-barred." *Id.* This interpretation is consistent with the way that we have interpreted 28 U.S.C. § 2255(e), which forecloses relief under 28 U.S.C. § 2241 unless the remedy afforded by § 2255 "*is* inadequate or ineffective." 28 U.S.C. § 2255(e) (emphasis added). We have said that relief through a § 2255 motion is not inadequate or ineffective if the provision could have afforded relief had the motion been filed earlier. *See Prost v. Anderson*, 636 F.3d 578, 584 (10th Cir. 2011) (Gorsuch, J.) ("If a petitioner's argument challenging the legality of his detention could've been tested in a § 2255 motion, the clause is satisfied"). This interpretation is also consistent with *Morgan*. *See* 346 U.S. at 512 ("Where it cannot be deduced from the record whether counsel was properly waived, we think, *no other remedy being then available* and sound reasons existing for *failure to seek appropriate earlier relief*, this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court" (emphasis added)).

Further underscoring that *coram nobis* should not be available if there were other opportunities for relief, we have adopted the abuse-of-writ doctrine from habeas cases (recall that the *Morgan* Court said that *coram nobis* relief "is of the same general character as [a motion] under § 2255," 346 U.S. at 506 n.4). We have recognized that "a petition for writ of coram nobis must be rejected if the claim was raised or could have been raised on direct appeal, through a § 2255 motion, or in any other prior collateral attack on the conviction or sentence." *United States v. Miles*,

923 F.3d 798, 804 (10th Cir. 2019); s*ee Klein v. United States*, 880 F.2d 250, 254 n.1

(10th Cir. 1989) ("[C]*oram nobis* relief is not available to litigate issues already

litigated; it is reserved for claims which have yet to receive their first disposition").

Second, whereas *Morgan* said that *coram nobis* relief is only available to

correct "errors of the most fundamental character," 346 U.S. at 512 (internal

quotation marks omitted), we have taken that to mean that "[t]he writ is available

only to correct errors that result in a complete miscarriage of justice." *Klein*,

880 F.2d at 253 (internal quotation marks omitted). There has been no opportunity,

however, for this court to put a gloss on the meaning of *miscarriage of justice* in this

context. And if we did have that opportunity, we would have had little Supreme

Court guidance other than that *Morgan* indicated that *coram nobis* relief could be

afforded a defendant who pleaded guilty without having been assisted by counsel or

having waived that assistance. *See* 346 U.S. at 512.

But very recently some guidance has arrived. The Supreme Court expounded

on the meaning of *miscarriage of justice* in *Hunter v. United States*, 146 S. Ct. 1702

(2026). The writ of *coram nobis* was not at issue, but it is reasonable to assume that

the term's meaning does not change markedly in different criminal-law contexts. The

issue in *Hunter* was whether the defendant could appeal a condition of supervised

release (requiring participation in mental-health treatment and taking all prescribed

mental-health medications) even though he had waived in his plea agreement any

appellate challenges to his conviction and sentence. The Court did not decide whether

the defendant's complaint in that case satisfied the miscarriage-of-justice standard. It

**9**

provided a few examples, however, such as a sentence above the statutory maximum, and made some more general statements. *See id.* at 1714. The Court said that the miscarriage-of-justice standard when "properly understood and applied, sets a high bar." *Id.* at 1713. For instance, an appeal waiver may be set aside under the standard "only if the sentence is marred by the kind of egregious error that would bring the judicial system into disrepute. The error must be obvious—not one a judge could reasonably make. And it must be of the type that would undermine public confidence in the judiciary" and "discredit the judiciary's commitment to the law." *Id*. "The point of the miscarriage-of-justice limit . . . is to offer a safety valve for extreme cases—a way out of a waiver when the justice system's basic integrity is at stake." *Id*. at 1713–14.[2]

Third, in accord with *Morgan*'s requirement that the *coram nobis* petitioner provide "sound reasons . . . for failure to seek appropriate earlier relief," 346 U.S. at 512, this circuit has required petitioners "to exercise due diligence in seeking the writ," *Klein*, 880 F.2d at 254. In *Klein* we rejected the petitioner's request for *coram nobis* relief because he did not explain why he waited seven years after discovering new evidence to seek relief. *See id.* But, of course, a petitioner is not required to raise an issue in a *coram nobis* petition before he or she could reasonably have known the relevant facts (although the petitioner would need to be diligent in pursuing *coram*

---

[2] Ironically, perhaps the gravest injustice—wrongful incarceration—is unlikely to be the subject of a *coram nobis* petition. A challenge to such injustice will almost always be available through habeas proceedings, which precludes use of the *coram nobis* remedy.

*nobis* after learning those facts). Such lack of knowledge would be a "sound reason[]" for not pursuing the claim earlier. *Morgan*, 346 U.S. at 512.

There may also be occasions in which a petitioner is excused from raising a legal issue because, as in the habeas context, the issue only became available after a change in law. *See Miles*, 923 F.3d at 804 (applying to *coram nobis* context the "traditional grounds that have excused successive or abusive habeas petitions"); *cf.* 28 U.S.C. § 2255(f)(3) (providing that in very limited circumstances the time in which a motion under § 2255 must be brought does not begin until Supreme Court recognizes the right invoked by the movant). Still, "it is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (internal quotation marks omitted).

To complete this discussion, some recurring issues in *coram nobis* jurisprudence merit a few words. *Coram nobis* is not available to challenge state convictions, even if those convictions violate federal constitutional law. *See Rawlins v. Kansas*, 714 F.3d 1189, 1196 (10th Cir. 2013) ("it has long been settled in this circuit that federal courts have no jurisdiction to issue writs of coram nobis with respect to state criminal judgments" (brackets omitted)); 28 *Moore's Federal Practice* § 672.02[2][c], 43 (3d ed. 1997) ("Federal courts do not have jurisdiction to issue writs of coram nobis to state prisoners challenging state convictions"). At common law, "coram nobis was a writ from the judgment-issuing court to itself,

granting itself power to reopen that judgment. It is not a writ that one court may issue to another." *Rawlins*, 714 F.3d at 1196.

Another matter that is occasionally overlooked is that *coram nobis* relief may be available to someone in custody, if only rarely. There is no absolute out-of-custody requirement. The reason why someone in custody is ordinarily ineligible for a writ of *coram nobis* is that such persons can almost always challenge their custody through proceedings under 28 U.S.C. §§ 2241 or 2255, so they have an available remedy other than *coram nobis*. But habeas proceedings are not available to someone in custody who is raising a challenge to a component of the sentence other than custody—such as a challenge to a fine or restitution. In that limited circumstance, therefore, *coram nobis* may be available. *See Ramdeo v. United States*, 136 F.4th 1348, 1352–54 (11th Cir. 2025); *cf. Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (recognizing *coram nobis* relief is "not limited by the 'in custody' requirement of habeas corpus").

Perhaps of greatest importance, and contrary to the view of the government in this case, which relies on an unpublished opinion of this court, an assertion of actual innocence is not necessary to obtain a writ of *coram nobis*. Indeed, there was no such assertion in the Supreme Court's leading case of *Morgan*. This is not to say that actual innocence is irrelevant in such proceedings. For one thing, one would think that the conviction of an innocent person would satisfy the miscarriage-of-justice requirement. Also, actual innocence is likely to override procedural barriers to a petition for a writ of *coram nobis*, because it serves that function in habeas cases. *See*

*McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue [in habeas proceedings] his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief"); *Miles*, 923 F.3d at 806 (on review of *coram nobis* petition, recognizing actual-innocence exception to procedural bar but rejecting the exception under the specific circumstances of the case). Because of this potential relevance of actual innocence, it was appropriate for us to point out in *United States v. Bustillos*, 31 F.3d 931, 934 (10th Cir. 1994), that the *coram nobis* petitioner did not assert innocence, and therefore could not show a miscarriage of justice on that ground. But if that failure to assert innocence was dispositive, we would have had no reason to address anything else in our miscarriage discussion. *See id.*

### B.    Application to This Case

Petitioner argues that the district court erred in denying his petition for *coram nobis* relief in several ways. (1) He contends that the district court was wrong to "treat[] actual innocence as a prerequisite to coram nobis where the asserted error is a fundamental Sixth Amendment violation that undermined the plea's validity." Aplt. Br. at 5. (2) He argues that "the court misapplied diligence and collateral-consequence prerequisites despite Appellant's out-of-custody status and continuing statutory inadmissibility." *Id.* at 6. And (3) he challenges the district court's rejection of his claim on the merits. He complains that "even accepting that *Padilla*'s new rule is not retroactive under *Chaidez*, counsel's duty to render objectively reasonable advice during plea negotiations predates *Padilla* under *Strickland* [*v. Washington*,

466 U.S. 668 (1984)], and contemporaneous professional norms," *id.* at 5; and he asserts that "the unadvised immigration consequences rendered the plea unknowing and involuntary" *id.* at 6.

As our above discussion shows, we agree with Petitioner that his petition for *coram nobis* relief is not barred simply because he does not assert actual innocence. Also, although there was no legal bar to his raising a claim of ineffective assistance of counsel through a § 2255 proceeding while he was in custody on his 1988 cocaine-possession sentence, we are reluctant to hold that his *coram nobis* petition is barred for failure to file a § 2255 motion during that period because he received only a one-year sentence and it may have been reasonable for him not to know of the immigration consequences of his plea while he was in custody (as required for a § 2255 motion). But there are other grounds for denying relief.

To begin with, Petitioner has not adequately alleged that he acted diligently in seeking *coram nobis* relief. It is unclear what he means when he says that the district court abused its discretion because "[a]s to diligence" it "relied on categorical assumptions rather than a fact-sensitive assessment of Appellant's efforts and the practical barriers to earlier relief." Aplt. Br. at 8–9. We assume that he is referring to the facts and barriers that he presented in his petition below. He recites as follows: he was married in 1997, his wife "petitioned" him while she was a lawful permanent resident, and she later became a U.S. citizen. Aplt. App. at 8 (Pet. for Writ of *Coram Nobis*). He then "filed for [an] adjustment of status in 2001 and was denied due to being inadmissible under INA § 212(a)(2)(A)(i)(II) (controlled substance grounds of

**14**

inadmissibility) on July 19, 2004." *Id.* And he admits that he "discovered that he was permanently inadmissible on the date that his application for adjustment of status was denied." *Id.*; *see also* Aplt. App. at 26–28 (Pet. for Writ of *Coram Nobis* Ex. E (government denial of Petitioner's application for status as a permanent resident on the ground of his 1988 conviction)). But that date of discovery was more than two decades before he filed the petition before us. This history does not portray the requisite diligence. *See Klein*, 880 F.2d at 254 (defendant was not diligent because he did not seek relief until seven years after obtaining the information relied on in his petition for *coram nobis* relief). Petitioner cannot excuse his delay through his claim that he "remained vigilant and sought the advice of multiple attorneys." *Salgueido v. United States*, 789 F. Supp. 3d 1088, 1091 n.3 (D.N.M. 2025) (internal quotation marks omitted). He does not suggest that he sought counsel before 2017, he has not alleged that any of the attorneys he lists provided ineffective assistance (and insofar as they advised him that he had no claim, they were probably correct), nor does he provide any other justification for his delay after 2017.

Further, Petitioner's claim loses on the merits. True, in *Padilla* the Supreme Court required criminal-defense attorneys to "inform non-citizen clients of the risks of deportation arising from guilty pleas." *Chaidez*, 568 U.S. at 346. But *Chaidez* held that *Padilla*'s new rule was inapplicable to defendants (like Petitioner) "whose convictions became final prior to *Padilla*." *Id.* at 358. Nevertheless, Petitioner argues that even without *Padilla*, he can raise the issue "whether counsel's performance in 1987 was reasonable in light of prevailing norms and whether prejudice is shown."

**15**

Aplt. Br. at 7. Not so. By declining to make *Padilla* retroactive, *Chaidez* was saying that the interests in finality prevail over correcting the ineffective-assistance-of-counsel error in earlier cases. Therefore, Petitioner's effort to show that his attorney was ineffective under norms established by 1987 is beside the point. What Petitioner wants to do is prevail by making the same arguments that Padilla made regarding ineffective assistance of counsel. But the Court's instruction that *Padilla* is not retroactive is simply to say that those arguments cannot be considered to set aside judgments that were final before *Padilla*.[3]

### III.    CONCLUSION

We **AFFIRM** the district court's dismissal of the petition.

---

[3] Because Petitioner cannot claim ineffective assistance of counsel, he also cannot claim that his plea was involuntary because of ineffective assistance.